```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
MARJORIE MARCIA CLARKE,                  :
                    Plaintiff,           :
                                         :       02 Civ. 3079 (DLC)
          -v-                            :
                                         :       OPINION & ORDER
FLUSHING MANOR CARE CENTER, NEW YORK     :
CITY COMMISSION ON HUMAN RIGHTS,         :
                    Defendants.          :
                                         :
-----------------------------------------X
```

Appearances:

<u>Pro se</u> plaintiff:
Marjorie Marcia Clarke
33-24 Parsons
Flushing Manor Care Center
New York, NY 11354

For defendants:
Paul Hugo Galligan
Seyfarth Shaw LLP
620 8th Avenue
New York, NY 10018

DENISE COTE, District Judge:

Marjorie M. Clarke has sued her former employer Flushing Manor Care Center ("FMCC") for employment discrimination, asserting that she was fired because of her color. FMCC's motion for summary judgment is granted.

Background

Clarke filed her complaint with this district's Pro Se Office on March 26, 2002. She asserted a Title VII claim,

alleging that she had been fired because of her color. The Honorable Lawrence McKenna, to whom this case was originally assigned, dismissed the claims brought against Clarke's co-workers and supervisor, and against her union representative in an order of March 18, 2003.

Following the completion of discovery, the remaining defendant FMCC filed a motion for summary judgment on December 8, 2003.[1] FMCC also served the plaintiff with a Local Civil Rule 56.2 Notice. Clarke filed her opposition on or about January 5, 2004.

The following facts, taken from the summary judgment submissions, are undisputed or taken in the light most favorable to Clarke. FMCC is a nursing home facility located in Flushing, New York. Clarke, who is black, worked as a laundry aide from July 1987, until she was fired on May 1, 2001 by Richard Sherman ("Sherman"), the Senior Administrator of FMCC.

Clarke's co-workers were Helen Camantigue ("Camantigue") and Eladia Castillo ("Castillo"), who are Filipina and Domincan, respectively. The three women were responsible for washing residents' clothing and bedding. Gosia Grande ("Grande")

---

[1] Clarke also named the New York City Commission on Human Rights ("Commission") in her complaint and served this defendant on July 2, 2002. The Commission has not answered or moved with respect to Clarke's complaint, and the plaintiff has not moved for entry of a default judgment. Since Clarke's complaint makes no allegations about how the Commission was liable to Clarke, the Commission is dismissed from this case.

supervised their work from November 1997 until January 2001. Angela Pirulli ("Pirulli") was the supervisor from January 30, 2001 until Clarke was fired.

From the beginning of Grande's tenure as supervisor, Clarke and Grande had a poor relationship. As reflected in contemporaneous memoranda filed in Clarke's personnel file, Clarke received numerous warnings regarding inappropriate workplace behavior. Clarke frequently screamed at Grande. For example, a January 28, 1998 memorandum reports that Clarke was reprimanded for bringing personal laundry to wash at work and for screaming at Grande to "get out of my face." A memorandum from two days later reports that Clarke threatened Grande and referred to her as a crack-head and bimbo. Clarke denies that she called Grande these derogatory names "to her face," and complains that her co-workers are "back-biters" for telling management that Clarke had used these terms in talking about Grande. Clarke's personnel file documents warnings she was given in April and again in June 2000 about the language she used in addressing Grande. A counseling session was held with Clarke and her union delegate on June 6, 2000 to address Clarke's insubordination and use of foul language. On August 14, 2000, Clarke was given a verbal warning for throwing patients' clothing on the floor.

Clarke also had difficulty getting along with her co-workers.  Believing that Castillo had sprayed something obnoxious around Clarke's locker at work, Clarke threatened Castillo in the street outside the FMCC in October 2000. Castillo filed a police report and the FMCC met again with Clarke and her union representative to admonish her about how she had handled the dispute with Castillo and to explain how to handle any complaints about her co-workers in the future.

On March 2, 2001, Sherman suspended Clarke for three days and issued a final warning to her after she left threatening notes in laundry bags for her co-workers.  One note read: "If you f.ing S.O.B. open this bag and remove any of this gown [sic] when I come in on Friday you will see.  M.C."  Between March 16 and April 23, Clarke reported to work late six times.  Then on April 20, a black co-worker filed a written complaint about Clarke's behavior toward her and her co-workers.  Sherman met with Clarke, her union representative and other employees on May 1 and fired Clarke.  Sherman pointed out that Clarke was unable to work as a team player, failed to perform her job duties, and arrived late for work.

At her deposition, Clarke largely conceded that she had used the abusive and threatening language described by her supervisors and co-workers, and that she had been admonished and disciplined over several years for this conduct.  She explains

4

in her opposition to this motion that her son died in June 1997, and she returned to work in the belief that being busy would help her deal with his death.  In retrospect, Clarke realizes that she was angry[2] because of his death and that work did not provide the "therapy" that she had hoped it would.  Clarke explains that in her vulnerable frame of mind, she could not pay attention to "little things."  She complains that Grande would not leave her alone.  As for her foul language, she complains that Camantigue also used the "F" word and that Castillo was no "saint."  She asserts that a review of her attendance sheets would show that she "did not make a habit" out of getting to work late.  She argues that her troubles with Grande did not actually precipitate her firing, apparently because Pirulli supervised her during the three months preceding her firing.

Clarke ends her statement in opposition to this motion with the candid assessment that the period following her son's death was a "very low time" in her life and that she did not feel good about herself during that period.  She was happy to leave when she was fired and it made her realize how much she had been going through.  She asserts that she never wants to see any of her co-workers or Grande again in her life.

---

[2] Clarke's written statement in opposition to the summary judgment motion states that she was "hungry," but read in context it is clear that she means to say that she was angry.

At the time Clarke filed her opposition to the summary judgment motion, she also requested appointment of counsel. In May 2008, Judge McKenna referred the case to this district's Pro Se Office for appointment of counsel. In March 2009, Judge McKenna endorsed a letter from FMCC with an indication that he would refrain from deciding the pending motion for at least six months in the hope that an attorney would volunteer to represent the plaintiff.[3]

On June 5, this case was transferred to this Court. The Court confirmed with the Pro Se Office that no attorney had shown any interest in volunteering to appear as Clarke's attorney in the year since Judge McKenna referred the case to that office. As a result, on July 2, this Court advised the parties that it would be addressing the summary judgment motion, which had been pending for over five years. Neither Clarke nor FMCC has objected.

Discussion

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

---

[3] While the endorsement refers to the plaintiff's motion, read in context it appears to be a reference to FMCC's summary judgment motion.

moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Sista v. CDC Ixis N. Amer., Inc., 445 F.3d 161, 169 (2d Cir. 2006).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings.  Fed. R. Civ. P. 56(e); accord Sista, 445 F.3d at 169.

   Claims of employment discrimination brought pursuant to Title VII are analyzed under the burden-shifting approach set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); accord Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008).  The plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (citation omitted).  With respect to the

7

fourth element, a plaintiff may meet his burden of establishing an inference of discriminatory intent through a number of means, including the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001).

If the plaintiff satisfies this initial burden, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action."  Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) (citation omitted).  The defendant's burden is "one of production, not persuasion."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  If the defendant meets this burden, it "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (citation omitted).  The ultimate question is whether the evidence, viewed in the light most favorable to the plaintiff, would support a finding "that the defendant

intentionally discriminated against the plaintiff." <u>Reeves</u>, 530 U.S. at 143.

FMCC has submitted admissible evidence to show that it fired Clarke for her poor work performance. Clarke has offered no evidence to raise a question of fact regarding Sherman's motives for firing Clarke. She has not raised a question of fact from which a jury could infer that the reasons Sherman identified for her firing were pretextual, and, as significantly, she does not suggest that her color played any role in the difficulties she encountered at work or in the termination decision. Thus, even if it were possible to find that she had presented prima facie evidence of discrimination, she has not presented evidence from which a jury could find that FMCC intentionally discriminated against her on account of her color.

Conclusion

Flushing Manor Care Center's December 8, 2003 motion for summary judgment is granted. The Clerk of Court shall close the case.

SO ORDERED:

Dated:   New York, New York
         July 17, 2009

-----------------------------
DENISE COTE
United States District Judge

9